**Louis FLANAGAN, Petitioner-Appellant,**

**v.**

**C. Murray HENDERSON, Respondent-Appellee.**

**No. 73-2451.**

United States Court of Appeals, Fifth Circuit.

July 12, 1974.

---

James E. Franklin, Jr., Shreveport, La., for petitioner-appellant.

William J. Guste, Atty. Gen., Baton Rouge, La., Thomas A. Self, Dist. Atty., Parish of DeSoto, Many, La., LeRoy A. Hartley, Sp. Counsel, and Asst. Atty. Gen. of La., New Orleans, La., for respondent-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

CLARK, Circuit Judge:

Louis Flanagan was convicted by a jury in the 11th Judicial District Court of the State of Louisiana of aggravated rape and was sentenced to life imprisonment. His right of direct appeal to the Supreme Court of Louisiana [1] was substantially harmed, if not effectively thwarted, by the failure of one of his two retained counsel to perfect an appeal on the basis of the numerous Bills of Exception taken during the trial court proceedings. The effect of this failure was to limit the appeal record to the minute entries made by the trial court clerk. The Supreme Court of Louisiana affirmed his conviction with one justice dissenting. When Flanagan initially sought federal habeas corpus relief, he was required to exhaust his state habeas corpus remedy. He did so and

1. State v. Flanagan, 254 La. 100, 222 So.2d 872 (1969).

then reasserted the present action in the court below, which denied him relief. On the present appeal Flanagan asserts: (1) denials of due process, in the prosecution's refusal to produce several items of exculpatory evidence and the trial judge's refusal to sequester the prosecuting witness; (2) deprivation of effective counsel because of the failure of his retained attorneys timely to perfect a meaningful appeal from his conviction; and (3) procedural error by the federal habeas court in denying him an evidentiary hearing. Agreeing with the last contention, we vacate the order denying the writ and remand.

Both the state and federal habeas proceedings were based upon the record generated by the State trial court. This consists of three volumes which contain pleadings, minute entries by the State district court clerk, various orders entered by the State trial judge and a series of abbreviated excerpts from the court reporter's notes which relate to the 108 Bills of Exception assigned during pre and post trial proceedings and during the trial itself.[2]

The particular evidentiary deprivations that Flanagan asserts as violative of due process are as follows: the refusal to allow pretrial study by an expert employed by defendant of a latent fingerprint taken from the prosecutrix's automobile (in which the rape took place); the assertion of a State law privilege[3] to thwart the disclosure of an investigative report prepared by the corporation that employed both the prosecutrix and Louis Brooks, the person she originally accused of this crime; the refusal, under a similar claim of privilege, to produce an affidavit given by the prosecutrix charging Brooks with the rape, despite testimony by the prosecutrix that she had not made such an implicating statement or affidavit; and finally, the unavailability of a sample of sperm taken by the parish coroner from the body of the prosecutrix on the night of the crime.[4]

In denying relief without a hearing, the court below found the record disclosed that one of the attorneys who had represented Flanagan during his trial had previously represented Louis Brooks when he was suspected of the crime;[5] and that the prosecutrix had been subject to full cross-examination as to the facts and circumstances surrounding her initial misidentification and all factors related to her present identification of Flanagan. Additionally it found that the prosecution's refusals to furnish the items of information sought prior to trial were not prejudicial, did not amount to a deprivation of constitutional right and, if error, were harmless. The court further found the record before it disclosed that the prosecutor did not withhold any evidence favorable to petitioner prior to or during the trial and that the petitioner knew all of the information he sought to acquire.

██ If, as alleged by Flanagan, the prosecution deliberately kept from his attorneys evidence in its possession which was favorable to his acquittal, a denial of due process has resulted.

---

2. In addition to these Bills of Exception, counsel for petitioner filed more than 30 motions for various forms of pre and post trial relief. These motions and all orders thereon also form a part of this record.

3. La.Rev.Stat. § 44:3 (1940).

4. During the prosecution's case the coroner testified that in the course of his examination of the prosecutrix on the night of the rape a sample of male sperm had been taken from her vagina. On cross-examination the coroner stated he did not know whether such a sample could reveal the blood type of the rapist but promised to consult others and testify later. He subsequently informed the court that such typing was medically possible but that he could not locate the sample.

5. Brooks, who was arrested shortly after the rape was reported, remained in Parish prison for over one month before petitioner was accused.

Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Guerrero v. Beto, 384 F.2d 886 (5th Cir. 1967); Annotation: Withholding or Suppression of Evidence By Prosecution, 34 A.L.R.3d 16. Since the record before us does not contain the affidavit of the prosecutrix, the challenged fingerprint, the report of the employer or more than brief excerpts from the testimony of the prosecutrix, the coroner or any other witness who appeared at the trial, there is no factual basis upon which to judge whether the allegations are well taken or not.

In Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1973), the Court stated:

> Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.

*See also* 28 U.S.C. § 2254(d).

■ It well may be that the entire record transcript of the State trial is still available and that it alone will afford a fact finding procedure which is adequate to afford a full and fair hearing. However, no such transcript is now a part of the record in this cause and no fair appraisal of the reliability of the resolutions of those fact issues which have been developed by the petition can be made from the bits and pieces of the trial transcript which formed the record examined by the court below. Such a record is inadequate. Flores v. Estelle, 492 F.2d 711 (5th Cir. 1974). The court did not have before it the testimony of those who could accurately describe the facts. *Cf.* Swanson v. Estelle, 492 F.2d 115 (5th Cir. 1974).

■■ Notwithstanding his undoubted good faith, the prosecutor's unsupported assertion that the items sought were not exculpatory is no answer. Nor is it sufficient for counsel to describe the proof as totally overwhelming where the whole record is not presented. Similarly, the assertion by the prosecutor that the item sought is privileged under State law cannot end the inquiry into a defendant's constitutional right to its production or disclosure. If the supplementary record developed after remand does not conclusively establish its character or the lack of defendant's need for it in his defense, such physical evidence —which the petitioner has never seen— must be subjected to an *in camera* examination by the court. Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968), cert. denied, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969).

On remand, the district court must require the production of a record which will furnish a reliable basis for resolving the disputed issues of fact. The extent to which further evidentiary proceedings in that court will be required depends upon the availability of the trial transcript and the use of other fact development procedures, the precise course of which is left to the district court.

Since the cause must go back for additional fact development, we consider it appropriate to comment on an issue which is bound to recur. While the result of the default of Flanagan's counsel in perfecting a meaningful appeal has become final under Louisiana law—an appeal on a record limited to clerical notations—it is not final as a matter of Sixth Amendment right.

■ If an *appointed* counsel should altogether fail to take an appeal which a defendant requests, precedent in this circuit establishes that such neglect amounts to ineffectiveness per se. *See* Bailey v. Ault, 490 F.2d 71 (5th Cir. 1974); and the cases discussed in Lumpkin v. Smith, 439 F.2d 1084 (5th Cir. 1971). Appointed counsel error

which leaves a defendant with only an abbreviated right of review has also been held to deny a constitutional right. Entsminger v. Iowa, 386 U.S. 748, 87 S. Ct. 1402, 18 L.Ed.2d 501 (1967). Although the standard by which minimal competence of retained counsel is to be judged is similar, any errors of Flanagan's privately employed counsel cannot be automatically charged to the state. However, since the default of one of his attorneys in properly perfecting a full appeal was promptly made known to the trial judge in the form of a request for extension of time to perfect a regular appeal, state involvement unquestionably is present here. When a court discovers that an attorney has been derelict in the performance of a court duty which could forfeit a legal right accorded to a defendant in a criminal case is significant as the right to an appeal on the merits, disciplinary measures against the attorney—rather than deprivation of the defendant's rights—may be the only constitutional remedy. At least that is true in this case. Therefore, the district court must include in the record developed sufficient information to demonstrate whether the defendant personally waived his right to appeal upon a record comprised of his Bills of Exception. The right to this form of appeal, which had been fully perfected throughout the trial proceedings (and which the State, through court and prosecutor, knew had been so perfected) is one which his retained attorneys cannot waive for him. Collier v. Estelle, 488 F.2d 929 (5th Cir. 1973).

The trial judge's discretionary action in permitting the prosecutrix to remain in the courtroom during the trial does not appear to present an issue of constitutional dimensions.

The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Remanded.